# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

GEORGE P. DAVIS *et al.*

*v.*

THE COMMISSIONERS OF HIGHWAYS.

*Filed at Springfield November 2, 1892.*

143     9
70a 536
143     9
177   142

1. DRAINAGE—*draining land upon the highway.* So long as a land owner whose land borders on a highway follows a natural depression in draining his lands into a ditch along the highway, the commissioners of highways will have no power to interfere; but when an attempt is made to divert the water from its natural course, and cast it upon the highway out of such course, the commissioners of highways may interfere and prevent such action on the part of the land owner, especially when such diversion is likely to endanger the safety of the highway by increasing the width and depth of a ditch along the highway.

2. Under the decisions of this court and the statute, (sec. 4 of the act to provide for drainage for agricultural and sanitary purposes,) the owner of lands has the right to drain the same, following the natural course of the surface water, even across or along a public highway, without the consent of the commissioners of highways. But the land owner will not have the right to drain the surface water from his land into a ditch along a public highway when that is not the natural channel in which the water runs.

3. SAME—*water from dominant to servient heritage.* The owner of the dominant heritage has the right to have the surface water falling

or coming naturally upon his premises, pass off through the natural drains upon and over the lower or servient lands; and the owner of the dominant heritage may, by ditches or drains, drain his land into the natural and usual channel, even if the quantity of water thrown upon the servient heritage is thereby increased.

4. Section 71 of chapter 121 of the Revised Statutes, relating to roads and bridges, has no application to a ditch which has not been constructed or used as a means to carry off water from adjoining higher land, when to reach the same the land owner is compelled to divert the water from its natural course.

5. SAME—*tile drain in highway—allowing adjoining owner to connect.* Under section 6 of the Road and Bridge law, if the commissioners of highways determine to lay a tile drain along a public highway, it will be their duty to allow adjoining owners to connect with such drain by paying such sum as the enlargement of the tile drain will cost, in order to carry off the increase of water thereby created. This section has no application in a case of an open drain already made, when the commissioners of highways are not taking steps to tile-drain the highway.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of McLean county; the Hon. O. T. REEVES, Judge, presiding.

This was a bill in equity, brought by George P. Davis, Sarah D. Swayne and Oliver E. Noris, against the commissioners of highways of township 12, north, range 3, east, in McLean county, and others, to enjoin the commissioners from removing or interfering with a certain tile drain constructed by the complainants partly in the highway between section 13, in Normal township, and section 18, in Towanda township. The appellants Davis and Swayne own said section 13, while appellant Schell, who was made a defendant, owns seventy acres in section 18, directly across the road, in Towanda township.

It was alleged in the bill that complainants Davis and Swayne were owners of section 13, in Normal township, and that Schell was the owner of a part of section 18, in Towanda township; that a public highway runs along the line between the two townships, which is under the care of the commission-

ers; that complainants Davis and Swayne had constructed a tile drain, commencing in the south part of their section and running in a northeasterly direction, crossing the highway in three different places, and emptying into a ditch on the east side of the highway, which ditch, it is alleged, had been constructed by the commissioners of highways some ten years before; that after the tile drain had been so constructed the commissioners notified the agent of Davis and Swayne that they must extend the same along said ditch for a certain distance, or remove it altogether, and that afterwards the commissioners tore out the tile, filled the head of the ditch, and turned the water across the road into a natural channel. The bill prayed for an injunction against a repetition of such acts and a temporary injunction having been obtained, the complainants Davis and Swayne replaced the tile and opened the ditch. Schell filed a cross bill, in which he prayed for the same relief sought by complainants.

The commissioners of highways answered the bill, in which they set up that the natural course of the water from section 13 was across the highway through a culvert, a short distance south from the point where the tile entered the ditch, over and across the lands lying east of the highway; that the said ditch on the east side of the highway was not a natural outlet for said drainage, and had not been made by the highway commissioners, but by the unauthorized action of others; that it crossed land which was naturally higher than the lands of Davis and Swayne, and that in order to drain into said ditch with said tile it had been necessary to deepen the ditch, and that when the commissioners saw what had been done they notified the agent of Davis and Swayne to remove their tile or carry it further east, and justified their action in removing the tile from the highway and turning it into the natural channel, through the culvert and across the highway, on the lands lying east. Replications were filed and a reference to the master, where much evidence was taken by the respective parties.

On the hearing, from the evidence introduced, the court in its decree found as follows: "That when the open ditch on the east side of the highway in controversy was made, the water from complainants' lands did not naturally flow in the line of said open ditch on said highway, but that said open ditch was cut through a rise in the ground in said highway, and that it was made because ditches had not been made and opened along the depression east of said highway through the lands of the cross-complainant Schell, through which lands of said cross-complainant the natural water-course for the drainage of complainants' lands then was and still is, and that without the consent of the commissioners of highways the complainants laid a tile drain over their land and across the highway, into said open ditch, and deepened the said open ditch on the east side of said highway about fifteen inches deeper than said open ditch was before complainants laid their tile drains in controversy, and that the increased amount of water brought by tile drains of complainants into said open ditch would tend to deepen and widen said open ditch in said highway, and render the same dangerous to the safe use of said highway; that the said commissioners of highways, so soon as they learned of what complainants had done, and had so deepened said open ditch and had connected their said tile drains with the same, and would thereby increase the flow of water in said open ditch, notified complainants that the commissioners would not consent to what had been done by complainants, and would not consent that said open ditch should remain open and carry said increased flow of water, and notified complainants that the commissioners would insist that complainants should continue their tile drain north in said open ditch through said rise in said highway, or that complainants should change their tile drains so as to run it straight across the road in the natural channel for the water to flow in, and cause the water to flow in said natural channel onto the land of the cross-complainant, Schell."

The court thereupon decreed that "the complainants have ninety days from the date of this decree in which they may, if they so desire, extend their said tile drains which now connect with said open ditch, north in said open ditch, through said rise in the ground in said highway; and in case they do so, said commissioners and their successors in office shall in no way interfere with such tile drain throughout the whole length of said tile ditch, if the complainants so choose, but said tile drain shall terminate, when laid, at some point which shall be in the natural course of the water, as shown by the plats filed with the bill and answers, and by the evidence in the case. It is further ordered, adjudged and decreed, that after the expiration of said period of ninety days from the date of this decree the injunction heretofore granted in this cause be wholly and fully dissolved, and the defendants herein shall have the full right and power, after the expiration of the said period of ninety days, to fill up said open ditch, as they may see proper; and as to said cross-bill of Edward E. Schell, the court orders and decrees that the same be dismissed for want of equity. It is further ordered, adjudged and decreed that the complainants pay the costs of this suit."

Mr. J. E. POLLOCK, and Mr. JOHN T. LILLARD, for the appellants:

We refer to 2 Starr & Curtis, p. 2136, sec. 2; sec. 6, p. 2138; sec. 71 of the same act; sec. 4 of the Drainage act; 3 Starr & Curtis, p. 203; *Crueger* v. *Town of Palatine,* 20 Ill. App. 423.

The owner of the fee in the right of way may mine under it, carry pipes beneath it or run a drain under it. *Perly* v. *Chander,* 6 Mass. 454; *Chamberlain* v. *Enfield,* 43 N. H. 356; *Holden* v. *Shattock,* 34 Vt. 536; *Palmer* v. *Silverthorne,* 32 Pa. St. 65; *Overman* v. *May,* 35 Iowa, 89; *Commissioners* v. *Beckwith,* 10 Kan. 603; *Wooding* v. *Fork Township,* 28 Pa. St. 355; *Kellogg* v. *Thompson,* 66 N. Y. 88; *Brookfield* v. *Walker,* 100 Mass. 94.

Messrs. NEVILLE & LINDLEY, for the appellees:

Owners of adjoining land have no right to drain into any drain upon the public highway without the consent of the commissioners. Sec. 4 of Drainage act.

A board of commissioners can not grant away the use of a public highway to a private person, and the right to perpetually flood the land of another can only be acquired by grant or prescription, and prescription can not be raised against one who had no power to grant. *Woodward* v. *Seely,* 11 Ill. 157; *Tanner* v. *Volentine,* 75 id. 624.

The commissioners of highways can not, by their conduct, work an estoppel against the public, or estop themselves from asserting any right which the public may have in the use of a highway. *Town of Rice* v. *Railway Co.* 30 Bradw. 481; *Johnson* v. *Rea,* 12 id. 331; *Railroad Co.* v. *Belleville,* 122 Ill. 376.

In the former case the court says: "There could not be any estoppel *in pais,* as against appellant, because the appellee has expended money in pursuance of the agreement, for it very well knew such an agreement on the part of the commissioners was beyond their powers, and void."

Commissioners of highways have no power to grant an easement in the highway inconsistent with the right of the use of the whole of the highway by the public. *Railroad Co.* v. *Belleville,* 122 Ill. 376; *Galbraith* v. *Littiech,* 73 id. 210; *Quincy* v. *Jones,* 76 id. 231; *Johnson* v. *Rea,* 12 Bradw. 331; *Railroad Co.* v. *Hoag,* 90 Ill. 339; *Gozler* v. *Georgetown,* 6 Wheat. 593; *Railroad Co.* v. *Reich,* 101 Ill. 157; *Alton* v. *Transportation Co.* 12 id. 37; *Logan County* v. *Lincoln,* 81 id. 156.

The owner of the dominant lands has no right to drain so as to create new channels on the servient estate. *Commissioners* v. *Whitsit,* 15 Bradw. 318; *Peck* v. *Herrington,* 109 Ill. 612.

The commissioners of highways have a natural easement to have the water from complainant's tile flow in the natural channel over the lands of Belleville. *Peck* v. *Herrington, supra.*

A court of equity will not interfere with the exercise of discretionary powers vested in public officers. *Thornton* v. *Roll*, 118 Ill. 350; *Brush* v. *Carbondale*, 78 id. 74; *Dickey* v. *Reed*, id. 269.

Per Curiam: We have carefully examined the evidence in this case, and while upon some of the points it is somewhat conflicting, yet we think the finding of the court, as embodied in the foregoing statement, is sustained by a clear preponderance of the evidence.

On the hearing a plat was put in evidence, which shows the highway, the open ditch constructed in the highway, the location of the drain, and the natural flow of water from the east half of section 13 across and along the highway. The starting point of the tile drain constructed by the complainants, as shown by the plat, was near the south-west corner of the east half of section 13. From that point it runs in a northeasterly direction, crossing the highway at a point designated "B." From thence the tile drain forms a circle on the Bedinger land, crossing the highway again at point "C." From this point a circle is made on the east half of section 13, intersecting the west side of the highway, opposite the Belleville land, where a culvert had been constructed across the road, for the purpose of carrying the water east across the highway on the Belleville land. Thus far the tile was constructed on a route where the water naturally flowed, but when the complainants came to the west side of the road, opposite the culvert, they did not follow the natural flow of the water across the road on the Belleville land, but left the route where the water naturally flowed, and cut their drain in a diagonal direction across the road, running in a northeasterly direction until they intersected the open ditch on the highway, running north. At the point where the tile drain enters the open ditch, as appears from the evidence, the surface of the ground is some three feet higher than the surface of the ground is twenty-five

feet further south, in the natural water channel.   No objection was ever interposed to the construction of the tile drain across the highway, or along the line of the highway, so long as complainants followed a route or channel where the water naturally flowed, but the commissioners claim that complainants have no right to carry the water out of its natural channel and empty it into an open ditch in the highway.

In *Peck* v. *Herrington,* 109 Ill. 611, in considering the rights and duties of adjoining land owners, and the rules which should govern them in draining their lands, we held that the owner of the dominant heritage or higher tract of land has the right to have the surface water falling or coming naturally upon his premises, pass off through the natural drains upon and over the lower or servient lands; and the owner of the dominant heritage may, by ditches or drains, drain his own land into the natural and usual channel, even if the quantity of water thrown upon the servient heritage is thereby increased. , In *Young* v. *Comrs. of Highways,* 134 Ill. 569, where an effort was made by the commissioners of highways, in improving the highway, to divert water from its natural channel and turn it upon the land of an adjoining land owner, adopting the principle decided in *Peck* v. *Herrington,* we held that the commissioners have no right or power to collect and carry a quantity of water along a highway which would naturally drain off in another direction, and discharge such accumulated water on the farm of an adjoining land owner.   Indeed, the legislature, following the principle announced in *Peck* v. *Herrington,* in 1885, in an act to provide for drainage for agricultural and sanitary purposes, in section 4 of the act provided: "Owners of land may drain the same in the general course of natural drainage, by constructing open or covered drains, discharging the same into any natural water-course or into any natural depression, whereby the water will be carried into some natural water-course or

into some drain on the public highway, with the consent of the commissioners thereto."

Under the principle established in the two cases cited and the section of the statute *supra*, it is plain that the complainants had the right to drain their lands across or along the highway, following the natural depression of the surface, whether the commissioners consented or not. So long as the land owner bordering on a highway follows a natural depression in draining his lands, the commissioners have no power to interfere; but when an attempt is made to divert the water from its natural channel, and cast it upon the highway out of its natural course, we think the commissioners, in the exercise of their powers to take charge of, keep in repair and improve, may prevent such action on the part of the land owner. It is true that the ditch into which the complainants sought to drain their lands had been constructed, or allowed to be constructed, by the commissioners, or at least they had allowed it to remain in the highway; but if, in their opinion, an increased flow of water would render the ditch more dangerous for public travel, we think they had the undoubted right to prevent any person from conducting water from its natural flow and turning it into the ditch.

Reliance is placed on section 71 of chapter 121 of the statute. This section of the statute provides a penalty for obstructing a highway by placing anything thereon, or by digging ditches, etc., and authorizes the commissioners to remove the obstruction and fill up the ditches, "excepting ditches necessary to the drainage of an adjoining farm, emptying into a ditch upon the highway." Where a ditch has been constructed in the highway, and the water from an adjoining farm naturally flows into the ditch and is carried off, under the statute the commissioners would be prohibited from filling it up or preventing the adjoining land owner from using it. But that statute has no application to a case of this character. Here

the ditch had not been constructed or used as a means to carry off water from complainant's lands, but, on the other hand, in order to reach the ditch the complainants were compelled to divert the water from its natural course. This is conceded by counsel in their argument, where they use the following language: "The tile drain followed the natural depression or channel of the slough in its various windings until it reached the west side of the road, opposite the point where it emptied into the ditch. At this point, instead of running directly across the road, (a culvert had been put into the ancient channel across the road,) it angled northward, and on the east side of the road the tile emptied into the ditch, about fifteen feet north of where the ancient crossing had been."

Attention has also been called to section 6 of chapter 121 of the act in relation to roads and bridges, which is as follows: "Whenever the commissioners are about to lay a tile drain along a public road, they shall have power to contract with the owners or occupants of adjoining lands to lay larger tile than would be necessary to drain the road, and to permit connection therewith by such contracting parties to drain their lands." Under this section it would doubtless be the duty of the commissioners, in case they determined to lay a tile drain along a public highway, to allow adjoining land owners to connect with such drain by paying such sum as the enlargement of the tile drain would cost in order to carry off the additional water which might come from the adjoining land owner. But here the commissioners were not taking any steps to tile-drain the highway, and the section can have no application whatever to the questions involved.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*